Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7821 | **DATE** | 2/27/2001 |
| **CASE TITLE** | American Society of Consultant Phar vs. Ann Patla, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion [doc. # 37] is granted in part and denied in part. Counts II and III of the plaintiff's amended complaint are dismissed without prejudice to Rule 12(b)(1), and plaintiffs thus may pursue these claims in state court. The defendants' motion to dismiss Count I is denied as to Ms. Patla in her official capacity, but is granted as to the IDPA pursuant to Rule 12(b)(6).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | FEB 27 2001 | |
| | Notified counsel by telephone. | date docketed | 48 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2/27/2001 | |
| | | 01 FEB 27 AM 9:45 | date mailed notice |
| JJK | courtroom deputy's initials | | JJK |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN SOCIETY OF CONSULTANT PHARMACISTS, *et al.* ) ) ) | |
| Plaintiffs, ) ) | No. 00 C 7821 |
| v. ) ) | Magistrate Judge Sidney I. Schenkier |
| ANN PATLA, in her official capacity as Director of the Illinois Department of Public Aid, and the ILLINOIS DEPARTMENT OF PUBLIC AID, ) ) ) ) ) | **DOCKETED** FEB 2 7 2001 |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case is brought by the American Society of Consultant Pharmacists and other independent pharmacies ("plaintiffs") against the Illinois Department of Public Aid ("IDPA") and its Director, Ann Patla, in her official capacity. In an amended, three count complaint, the plaintiffs seek a preliminary and permanent injunction, declaratory relief, and attorneys' fees and costs against the defendants for alleged violations of the Medicaid Act, 42 U.S.C. §§ 1396-1396v (the "Medicaid Act"), and 42 U.S.C. § 1983 (Count I), as well as two specific state law provisions: the Illinois Public Aid Code, 305 ILCS 5/5-5b (2000) (Count II), and the Illinois Administrative Procedure Act, 5 ILCS 100/5-45 (2000) (Count III). The defendants have moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), on the sole ground that this action is barred by Eleventh Amendment immunity (Doc #37-1).[1] For the reasons set forth below, the

---

[1] By the parties' consent, on January 24, 2001, this case was reassigned to this Court, pursuant to 28 U.S.C. § 636(c)(1) and Northern District of Illinois Local Rule 73.1(b), for this Court to conduct any and all proceedings in this case, and to enter final judgment (Doc. ## 40, 41, 42).

motion to dismiss is granted as to plaintiffs' supplemental state law claims and plaintiffs' federal law claim against the IDPA, but denied as to the federal law claim against Ms. Patla in her official capacity.

## I.

Due to the "hybrid nature of Eleventh Amendment jurisprudence" (Defs.' Reply Mem. 1), defendants have moved to dismiss under both Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).[2] Under either rule, all well-pleaded facts are taken as true, all reasonable inferences are drawn in favor of the plaintiff, and all ambiguities are resolved in favor of the plaintiff. *Mallett v. Wisconsin Div. Of Voc. Rehab.*, 130 F.3d 1245, 1248 (7th Cir. 1997) (Rule 12(b)(6)); *Komorowski v. Townline Mini-Mart & Restaurant*, 162 F.3d 962, 964 (7th Cir. 1998) (per curiam); (Rule 12(b)(1)); *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993) (Rule 12(b)(1)). Moreover, the purpose of a motion to dismiss is to test the sufficiency of the pleading to state a claim, in the case of Rule 12(b)(6), *In re HealthCare Compare Corp. Securities Litigation*, 75 F.3d 276, 279 (7th Cir. 1996), or to test subject matter jurisdiction, in the case of Rule 12(b)(1), *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) – not to test the merits of the suit.

That is an admonition both sides would have done well to heed, as their briefs strayed from the Eleventh Amendment issue to arguments about the merit of plaintiffs' claims (*see, e.g.*, Defs.'

---

[2] We read the Eleventh Amendment defense as raising a matter of subject matter jurisdiction, and thus properly asserted under Rule 12(b)(1). *See, e.g., Marie O. v. Edgar*, 131 F.3d 610, 614 (7th Cir. 1997) (affirming dismissal of claim against State of Illinois under Rule 12(b)(1) as barred by the Eleventh Amendment). Defendants' invocation of Rule 12(b)(6) is appropriate, however, because a "logically antecedent" question to the Eleventh Amendment inquiry is whether the statute in issue permits an action to be asserted against a state. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. ___, 120 S. Ct. 1858, 1866 (2000); *Powers v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000).

2

Mem. 7-8, 13; Pls.' Mem. 4-5; Defs.' Reply Mem. 4-6). In this opinion, the Court expresses no view as to the merits, but focuses solely on whether the claims pled by plaintiffs are not properly before the Court by application of the Eleventh Amendment or (in the case of the state law claims) the supplemental jurisdiction statute, 28 U.S.C. § 1367. That said, we turn to a summary of plaintiffs' factual allegations germane to the motion.

## II.

The plaintiffs are providers of pharmacy services to Medicaid recipients in Illinois (Am. Compl. ¶ 22). The State of Illinois, through the IDPA, reimburses plaintiffs for providing pharmacy services according to a reimbursement policy set by the IDPA (*Id.* ¶¶ 33-35, 37, 40-41). The defendants provide reimbursement by entering into provider agreements and contracts with pharmacies, including the plaintiff pharmacies, to provide prescription and non-prescription drugs and related products and services to medical assistance recipients (Am. Compl. ¶¶ 25-45). The form provider agreement requires the defendant IDPA to reimburse the participating pharmacy for brand name and generic prescription drugs, over-the-counter non-prescription drugs, and related services pursuant to the IDPA's reimbursement rate, which constitutes payment in full (Am. Compl. ¶¶ 44-45; Pls.' Ex. B). Until recently, reimbursement for prescription drugs through the medical assistance program has had two components: a methodology to calculate the cost of the product to be reimbursed and a dispensing fee (Am. Compl. ¶ 38).

On December 15, 2000, pursuant to an emergency rule, the IDPA implemented a new reimbursement formula that reduced the rate at which the State would pay pharmacies for providing services to Medicaid recipients (Am. Compl. ¶¶ 73-80). The plaintiffs claim that under the new formula, such rates of reimbursement are unreasonably low and will result in pharmacies curtailing

3

operations, laying off staff and going out of business (*Id.* ¶¶ 85, 86). The plaintiffs further claim that this will result in depriving Medicaid recipients access to certain drugs and services, and reducing the quality of care provided to certain Medicaid recipients (*Id.* ¶¶ 85, 99, 100).

The relief sought by plaintiffs includes a preliminary and permanent injunction prohibiting implementation of the emergency rule; a declaratory judgment that the emergency rule violates the Medicaid Act, the regulations promulgated under that Act, 42 U.S.C. § 1983, provisions of the Illinois Public Aid Code and Administrative Procedure Act, and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 (Am. Compl. ¶ 42). The prayer for relief does not seek a mandatory injunction requiring the implementation of any particular substitute reimbursement formula, and does not seek to recoup as damages amounts that plaintiffs claim would have been paid since December 15, 2000 had the prior reimbursement formula remained in effect. Moreover, in the briefing on the motion, plaintiffs have specifically disavowed any intent to seek such relief (Pls.' Mem. 1-2) ("Plaintiffs seek no monetary damages except fees and costs ..."; and "Plaintiffs do not seek to impose on Defendants any particular methodology").

### III.

There are two issues before the Court. *First,* the defendants claim that the motion to dismiss must be granted because the State is immune from suit in federal court under the Eleventh Amendment of the United States Constitution. *Second,* the defendants claim that the Court lacks subject matter jurisdiction over the supplemental state law claims brought by the plaintiffs under the Illinois Public Aid Code ("IPAC") and the Illinois Administrative Procedure Act ("IAPC"). For the reasons that follow, the Court finds that the Eleventh Amendment is a bar to suit for the state law claims asserted against the State in Counts II and III, but it is not a bar to Count I, because Count I

seeks only prospective injunctive relief against the State for an alleged violation of the Medicaid Act, a federal law. We begin our analysis with Count I.

A. **The Medicaid Act.**

In Count I, the plaintiffs allege that the defendants' emergency rule violates the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A), its attendant regulations (42 C.F.R. § 447.200, 447.201, 447.203, 447.204, 447.205, and 42 C.F.R. § 431.12), and 42 U.S.C. § 1983. The plaintiffs allege, *inter alia*, that the emergency rule changed the methodology for Medicaid reimbursement and, in doing so, violated federal law, in particular the equal access provisions of the Medicaid Act. The plaintiffs claim violations of these statutes because the emergency rule allegedly will cause the plaintiffs to go out of business, especially in rural or semi-rural areas where there is often only one Medicaid pharmacy (Am. Compl. ¶¶ 107, 121), and will therefore result in unequal access to plaintiffs' services based on the geographic locations of Medicaid pharmacies and recipients (*Id.* ¶ 124). The plaintiffs also allege that the emergency rule violates the Medicaid Act because it will force a reduction in or elimination of certain drugs and services and result in the termination of agreements with certain nursing homes and community integrated living arrangements ("CILA") (Am. Compl. ¶¶ 1, 125). According to plaintiffs, the emergency rule sets Medicaid reimbursement rates at a level that will "be insufficient to enlist enough Medicaid pharmacies to assure Medicaid recipients equal access to care and services under the Illinois Medicaid State Plan" (Am. Compl. ¶ 129). The plaintiffs allege that these violations of the Medicaid Act also violate 42 U.S.C. § 1983, because they "deprive the Medicaid Pharmacies of their rights to reasonable reimbursement under the Medicaid Act" – a right the plaintiffs claim is guaranteed to them by the Medicaid Act (Am. Compl. ¶¶ 130-31).

5

In their motion, the defendants argue that Count I must be dismissed because the Eleventh Amendment generally bars suits in federal court against states (and state officials named as defendants in their official capacity) for monetary damages or equitable relief. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The defendants assert this general rule as an absolute bar to Count I.

However, as is often the case with general rules, there are exceptions. One exception occurs when the suit is filed against a state official, in her official capacity, claiming a violation of federal or constitutional law and seeking only prospective injunctive relief that does not include money damages. *See Papasan v. Alian*, 478 U.S. 265, 276-78 (1986) (exception to rule that Eleventh Amendment bars official capacity suits against state exists where relief sought is for prospective injunctive relief against violations of federal law); *Pennhurst*, 465 U.S. at 102-05 (discussing *Ex parte Young*, 209 U.S. 123, 160 (1908) (state officials are not immune from responsibility for federal law violations); *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974) (plaintiff may sue state official alleging violation of federal law and federal court may award prospective injunctive relief but not retroactive monetary relief)). *See also MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 328, 336, 344-45 (7th Cir. 2000) (the *Ex parte Young* doctrine allows suits for prospective injunctive relief against the state to vindicate federal law); *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1996) (same). In particular, the Seventh Circuit has held that this exception applies when Medicaid healthcare providers sue the State to enjoin the enforcement of a change in reimbursement policies. *See Methodist Hospitals v. Sullivan*, 91 F.3d 1026, 1028 (7th Cir.

1996) ("[a] federal court could enjoin operation of the [state] rules even if the Eleventh Amendment forbids an award of damages").

That is what plaintiffs seek here. In Count I, the plaintiffs allege that the State, by its emergency rule, has violated Section 1396a(a)(30)(A) of the Medicaid Act (the "equal access" provision), and 42 U.S.C. § 1983 (through the federal right of action created for Medicaid providers under the equal access provision). As is stated in the prayer for relief (and confirmed in plaintiffs' memorandum opposing dismissal), to remedy that alleged violation the plaintiffs seek only a prospective injunction requiring the defendants to comply with the dictates of the equal access provision of the Medicaid Act; they do not seek to recover money damages, or to impose any particular reimbursement methodology on defendants. Under clear Seventh Circuit precedent, that is a claim plaintiffs may bring in federal court. *See Methodist Hospitals*, 91 F.3d at 1029 ("providers of medical care have a private right of action, derived through Section 1983, to enforce Section 1396a(a)(30)").

The defendants nonetheless take issue with the proposition that the plaintiffs' claim is merely for prospective injunctive relief, arguing that through artful pleading plaintiffs seek to mask what in reality is a request for money damages. Defendants assert that the order plaintiffs seek would necessarily determine how the IDPA "will pay pharmacies generally" (Defs.' Mem. 6-7), and thus will require "rate adjustments in the form of higher reimbursement for the cost of [prescription and non-prescription drugs] and increase the dispensing fee to plaintiff[s] . . ." (Defs.' Mem. at 8). The defendants further argue that this relief would be "compensatory, in the form of restitution, damages, or as a direct future payment from the state treasury" and thus is barred by the Eleventh Amendment (Defs.' Mem. 9). We disagree.

7

The plaintiffs concede, as they must, that the prospective injunctive relief they seek "may or will have an impact on the State's budget" (Pls.' Mem. at 6). And, we are mindful that, "[a]s explained in *Edelman*, under *Ex parte Young* the Eleventh Amendment may bar equitable relief if it in practice is a money judgment payable out of the state treasury." *See, e.g., Johnson v. Guhl,* 91 F. Supp. 2d 754, 771 (D.N.J. 2000). However, courts have not applied that principle where the monetary effect on the state treasury is ancillary to the injunctive relief sought, and is the result of the prospective injunctive relief rather than of a retroactive award. *See id.* at 771-72 (discussing statements in *Edelman* where the Court found that injunctive and declaratory relief was not barred when such relief was likely to have only an "ancillary effect on the state treasury"). *See also Wisconsin Hospital Association v. Reivitz,* 820 F.2d 863, 867 (7th Cir. 1987) (when the state treasury is "not directly affected" a suit under *Ex parte Young* is permitted). Thus, "even where 'a substantial ancillary effect on the state treasury accompanies the relief sought, the Eleventh Amendment does not bar relief aimed to directly 'bring an end to a present violation of federal law.'" *See MSA Realty Corp. v. State of Illinois,* 794 F. Supp. 267, 271-72 (N.D. Ill. 1992) (citing *Papasan v. Alian,* 478 U.S. 265 (1986)). *See also Rehabilitation Ass'n of Virginia, Inc. v. Kozlowski,* 838 F. Supp. 243, 249 (E.D. Va. 1993) (finding Eleventh Amendment bars only the payment of a retroactive monetary award and holding challenge to state Medicaid plan amendment altering billing procedures not barred by the Eleventh Amendment where plaintiff was seeking prospective injunctive relief and declaratory judgment, even if a necessary effect of such relief would result in future substantial payment of state funds).

The concept of an "ancillary" or "indirect" monetary effect is a refinement of the *Ex parte Young* exception to the Eleventh Amendment bar, which reflects the reality that prospective

compliance with federal law often will necessitate prospective expenditures of state funds. *Wisconsin Hospital Association*, 820 F.2d at 867 (noting that an injunction in that case "would have financial implications, as most injunctions do"). Were it the case that such expenditures automatically created an Eleventh Amendment bar, the *Ex parte Young* exception would be rendered a nullity and federal courts would be seriously compromised in their ability to require state compliance with federal law, and thus to "vindicate the supreme authority of federal law," which is the basis for the *Young/Edelman* exception. *Pennhurst*, 465 U.S. at 106. Thus, courts routinely have recognized the distinction between an award of retroactive money damages, which are expressly prohibited, and prospective monetary consequences on the state treasury that may flow from the injunctive relief granted, which are not barred by the Eleventh Amendment. *See, e.g., Edelman*, 415 U.S. at 668. *See also Johnson*, 91 F. Supp. 2d at 770-71; *Reivitz*, 820 F.2d at 867; *Kozlowski*, 838 F. Supp. at 249; *MSA Realty Corp.*, 794 F. Supp. at 271-72.

We believe the same distinction applies here. The plaintiffs do not ask to recover in this Court the money they claim to have lost (and to continue to be losing) as a result of the implementation of the emergency rule – a request that plainly would be barred by *Ex parte Young*. What they seek is to prohibit continued application of the emergency rule as contrary to federal law. While that may lead to the state spending more money in the future, if that is what it takes to comply with federal law, that expenditure would be ancillary to the injunctive relief. *See Edelman*, 415 U.S. at 668.[3] Likewise, plaintiffs' request for fees and costs is ancillary to the injunctive relief sought and

---

[3]The amended complaint does not spell out the precise terms of the prospective injunction plaintiffs seek, but in their opposition memorandum the plaintiffs state that they ask the Court to declare the "post-December 15, 2000 reimbursement methodology a violation of federal law and [to] prospectively enjoin Director Patla from continuing to reimburse at illegal rates" (Pls. Mem. 9-10). The Court believes that a prospective injunctive order and/or declaration could, consistent with the *Pennhurst* doctrine, clear the Eleventh Amendment bar by enjoining application of the current

9

is not barred by the Eleventh Amendment. *See, e.g., Missouri v. Jenkins*, 491 U.S.C. 274, 279 (1989) ("it must be accepted as settled that an award of attorneys' fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment"). Thus, Count I of the amended complaint survives defendants' Eleventh Amendment challenge.[4]

However, Count I does not survive against both defendants. While *Ex parte Young* allows a suit for injunctive relief to be brought in federal court against a state official acting in his or her official capacity, it is clear that *Ex parte Young* does not allow a State or its departments to be directly joined as parties. *See Papasan*, 478 U.S. at 276-77 ("[w]here the State itself or one of its agencies or departments is not named as a defendant and where a State official is named instead," the Eleventh Amendment is not a bar when the suit is to prospectively enjoin a violation of federal law under *Ex parte Young*; otherwise, the Eleventh Amendment bars suit, just as it does against the

---

formula and ordering the State to comply with federal law; if that happened, it would be up to the State (not the Court) to design a reimbursement methodology that satisfies the statute from the date of the order forward. Without holding that the plaintiffs are entitled to such an order under Count I, the Court finds that such relief would not be barred by the Eleventh Amendment.

[4]The defendants argue that *Seminole Tribe v. Florida*, 517 U.S. 44 (1996) and *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997) establish that the *Young/Edelman* exception to the Eleventh Amendment does not apply here. The Court disagrees. In *Seminole Tribe*, the Supreme Court found that Congress provided an unmistakably clear indication of its intent to abrogate by including in the statute at issue an alternative remedial scheme. In the instant case, unlike in *Seminole Tribe*, defendants do not claim that there is an alternative remedial scheme, or any other indication of Congress' intent to abrogate. Moreover, in the instant case, unlike *Seminole Tribe*, the plaintiffs do not rely on abrogation as their theory that the Eleventh Amendment applies here.

Similarly, the "special sovereignty" exception to the *Ex parte Young* doctrine laid out in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997), does not apply to the instant case. In *Coeur d'Alene Tribe*, the court found that *Ex parte Young* did not apply because that case was an extraordinary circumstance that involved relief which would return the control of a large portion of which were "considered an essential attribute of sovereignty." *Id.* at 2041 (quoting *Utah Div. of State Lands v. United States*, 482 U.S. 193, 195 (1987)). By contrast, it has been recognized that the Medicaid statute does not implicate such special historical sovereign interests of the states. *See Maryland Community Health System v. Glendening*, 115 F. Supp. 2d 599, 604 (D. Md. 2000); *see also Marie O. v. Edgar*, 131 F.3d 610, 617 and n.13 (7th Cir. 1997) (finding that under the IDEA, a suit against state officers seeking to enforce compliance with a federal program under which they have accepted funds "implicates no important [state] sovereignty interests").

state and its agencies and departments); *Pennhurst*, 465 U.S. at 100-01 (absent consent, a suit against a State or one of its agencies or departments is barred by the Eleventh Amendment, "regardless of the nature of the relief sought"). Moreover, it is well settled that "section 1983 does not authorize suits against states (states not being "persons" within the statute's meaning[.]"). *Powers*, 226 F.3d at 818. Thus, in line with governing authority, *see, e.g., Vermont Agency*, 120 S. Ct. at 1866; *Powers*, 226 F.3d at 818, we dismiss the federal claim against the IDPA under Rule 12(b)(6), rather than under Rule 12(b)(1). The dismissal of the IDPA will not affect the injunctive relief that plaintiffs may seek, of course, since Ms. Patla remains in the case in her official capacity as the Director of IDPA, and in that capacity can be sued for injunctive relief in this Court under *Ex parte Young*.

**B.     The Illinois Public Aid Code.**

In Count II, the plaintiffs allege that the defendants' emergency rule violates the IPAC. In particular, the defendants claim that rules adopted by the IDPA, such as the emergency rule in this case, must comply not only with the provisions of the IPAC, but also with provisions in the Medicaid Act, 42 U.S.C. § 1396a(30)(A), and "its attendant regulations" (42 C.F.R. §§ 447.200, 447.201, 447.203, 447.204, 447.205, and 42 C.F.R. § 431.12).

The defendants argue that Count II must be dismissed because it is barred by the Eleventh Amendment under the rule announced in *Pennhurst*, 465 U.S. at 98. In *Pennhurst*, the U.S. Supreme Court held that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." 465 U.S. at 117. In other words, a federal court cannot instruct "state officials on how to conform their conduct to state law." *Id.* at 106. In *Pennhurst*, the Court also held that the Eleventh

11

Amendment bar applies to supplemental state law claims, even if the requirements of 42 U.S.C. § 1367 (which governs the exercise of supplemental jurisdiction over such claims) are satisfied. *Id.* at 120. This is because supplemental jurisdiction is a doctrine of discretion and "[t]he Eleventh Amendment should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims." *Id.* "In sum, . . . neither [supplemental] jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment" and the court "must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121.

Plaintiffs concede that the Eleventh Amendment bars "suits in federal court to compel a State to comply with state law" (Pls.' Mem. 9). But, plaintiffs seek to invoke a limitation on this rule: that "federal courts have jurisdiction to prospectively require state officials to obey state law" when "federal regulations make compliance with the state plan a federal duty" (*Id.* at 13) (citing *Wisconsin Hospital Association v. Reivitz*, 820 F.2d 863 (7th Cir. 1987)). Under *Wisconsin Hospital Association*, if federal law makes compliance with a state law a federal duty, then enforcement of the federal law by the federal courts requires the exercise of federal subject matter jurisdiction, and the Eleventh Amendment bar gives way. *Id.* at 868. This dual compliance rule taps into the rationale for allowing prospective injunctive relief as articulated in *Pennhurst*, namely, the "need to promote the supremacy of federal law[.]" 465 U.S. at 105. Plaintiffs do not specify precisely how they contend IPAC falls within this exception, but presumably it is because Section 5/5-5b states that the IDPA is authorized to reduce payment rates for Medicaid services "with due regard for and subject to budgetary limitations *to the extent permitted by federal law.*" 305 ILCS 5/5-5b (2000) (emphasis added).

At the threshold, we note that this argument presents the converse of the situation in *Wisconsin Hospital Association*; here we do not have a claim that the Medicaid law makes compliance with IPAC a federal requirement, but rather an assertion that IPAC makes compliance with federal law a state requirement. Thus, to adjudicate the IPAC claim, the Court would be required to decide if state law (as shaped by federal law) has been followed. The Court is skeptical that engaging in such a state law interpretation is necessary to "promote the supremacy of federal law," so as to justify an exception to *Pennhurst*.

In any event, our review of IPAC persuades us that the exception does not apply to this particular statutory provision. The exercise of federal jurisdiction over the IPAC claim is unnecessary to vindicate the federal Medicaid law. In the event an injunction were to issue against Ms. Patla, that injunction would forbid her from enforcing a reimbursement formula that is contrary to federal law – an injunction that would control, irrespective of what IPAC says. On the other hand, if plaintiffs failed to establish a Medicaid violation, they might not be barred from asserting a state law claim under IPAC. That is because the federal Medicaid law at issue here is not entirely coextensive with IPAC. The equal access provisions of the Medicaid Act deal with just that – equal access – and not with whether, in enacting the reimbursement formula, "due regard" was given to state budgetary considerations and limitations as required by IPAC. Because federal law does not entirely control the enforcement or interpretation of all of the IPAC's substantive provisions, it is at least theoretically possible that the defendants could violate IPAC without violating the Medicaid Act or any other federal law. Any lawsuit based on such an independent state law violation would be barred by the Eleventh Amendment, and this Court's exercise of supplemental jurisdiction over such a claim would run contrary to *Pennhurst*. We therefore find that the Eleventh Amendment is

13

a bar to the IPAC claim because the Medicaid Act and its regulations do not necessarily make compliance with all of Section 5-5b(a) a federal duty.

In the alternative, even if the IPAC claim were not barred by the Eleventh Amendment, the Court would decline the exercise of supplemental jurisdiction, as it is permitted to do. Pursuant to 28 U.S.C. § 1367(a), state claims fall within a district court's supplemental jurisdiction if they are "so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999). However, the fact that supplemental jurisdiction can be exercised does not mean that it must be exercised. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997) (citation omitted). *See also Pennhurst*, 465 U.S. at 120 (citation omitted). Supplemental jurisdiction may be declined when the court finds that the supplemental claim "raises a novel or complex issue of state law," 28 U.S.C. § 1367(c)(1), or "in exceptional circumstances" that there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

The Court finds that both reasons for declining supplemental jurisdiction over Count II are present here. The parties have not cited to case law interpreting the statutory requirement that "due regard" be given to budgetary limitations, and the Court has found none. Thus, retaining this claim may require the Court to embark on an interpretation of this requirement, unguided by state court precedent. In addition, this case presents compelling reasons to decline the exercise of supplemental jurisdiction. The IPAC claim would require determinations of state law regarding decisions by state officials that, even if they fall within our judicial province, are as a matter of comity better left to state courts. The Court, therefore, will exercise its discretion and deny supplemental jurisdiction

14

over Count II. *See Port Chester Nursing Home v. Axelrod,* 732 F. Supp. 440, 445-46 (S.D.N.Y. 1990) (in case involving a challenge to New York's medicaid reimbursement program court held it could not properly exercise supplemental jurisdiction over plaintiff's state law claims because Eleventh Amendment prohibited court from issuing injunction under *Pennhurst,* and noting that, even if Eleventh Amendment bar did not apply, court would exercise discretion under Section 1367 and decline to entertain state law claims).[5] The Court, therefore, dismisses Count II without prejudice, under Rule 12(b)(1), as barred by the Eleventh Amendment. Alternatively, the Court dismisses Count II without prejudice pursuant to its discretion under Section 1367(c)(1) and (4).

### C. The Illinois Administrative Procedure Act.

In Count III, the plaintiffs claim that "the emergency rule is arbitrary and capricious" because the defendants "failed to consider the relevant factors of Section 1396a(a)(30)(A) and its attendant regulations" (Am. Compl. ¶ 137); and the defendants failed to comply with the procedures required for the issuance of an emergency rule under Section 5-45 of the Illinois Administrative Procedure Act ("IAPA") (Am. Compl. ¶¶143-148). In particular, with regard to the IAPA claim, the plaintiffs allege that the IDPA "failed to take reasonable and appropriate measures to make the proposed emergency rule known to the Medicaid Pharmacies in violation of the Administrative Procedure

---

[5] The Court also notes that Count II may be subject to dismissal for failure to exhaust administrative remedies. In Illinois, the general rule is that one may not seek judicial relief from an administrative action unless all administrative remedies available have been exhausted. *See Phillips v. Graham,* 86 Ill.2d 274, 289 (1981) (in case arising under Illinois Administrative Procedure Act, court found that preliminary injunctions should not have issued because administrative remedies had not been exhausted). There are exceptions to the exhaustion requirement, but we do not think any of those exceptions are applicable here. *Id.* (where statute challenged by asserting an arbitrary application rather than facial illegality a "party must first seek relief through the administrative remedies provided"). Because the defendants failed to raise an exhaustion argument, the plaintiffs have not had an opportunity to argue that this case falls within an exception (such as where there would be irreparable harm caused by further pursuit of administrative remedies). But this issue simply reveals another reason why – as a matter of jurisdiction or discretion – the IPAC claim is better left to the state courts, should plaintiffs choose to press the claim there.

15

Act" (Am. Compl. ¶ 148). As should be clear from the foregoing discussion, the IAPA claim is barred by the Eleventh Amendment under the *Pennhurst* rule and, even if it were not, Section 1367(a) and/or (c) provides a basis for dismissal.

The reasons for application of the *Pennhurst* rule are the same as those given for the IPAC claim in Count II. The factual determinations relevant to this claim involve determining what steps the State took to notify affected parties of the emergency rule (and when), and whether the State made appropriate filings. The relevant legal questions relate to whether the circumstances presented at the time the rule was created constituted an "emergency" and whether the measures taken were appropriate under the IAPA. These factual and legal questions, although loosely related to the subject matter of the Medicaid Act claim, do not involve the same analysis as the one required to resolve the Medicaid Act claim in Count I. The Medicaid Act claim (as pled) involves issues of equal access, not appropriate administrative procedure under Illinois law. Thus, Count III presents an independent state law claim with independent factual and legal determinations. This is precisely the type of state law claim that the Eleventh Amendment bars under *Pennhurst*. 465 U.S. at 106 ("it is difficult to think of a greater intrusion on State sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

Even if there were no Eleventh Amendment bar, the Court would not exercise supplemental jurisdiction over the IAPA claim. To begin with, there is a question whether the facts giving rise to the IAPA claim are so related to the Medicaid Act claim in Count I "that they form part of the same case or controversy." See 28 U.S.C. § 1367(a); *see also Groce*, 193 F.3d at 500. Moreover, even if Count III arguably fell within the parameters of Section 1367(a), the Court would choose to exercise its discretion under Section 1367(c)(4) and decline supplemental jurisdiction over this

16

claim. Adjudicating the IAPA claim would constitute an intrusion on the State's role of interpreting its own laws without any counterbalancing benefit of economy of scale, convenience, fairness and comity that typically would weigh in favor of exercising supplemental jurisdiction. *See Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 716 (1996) (doctrine of abstention calls for federal courts to respect independence of state governments, especially when exercising equitable powers); *International College of Surgeons*, 522 U.S. at 172-73 (in deciding whether to exercise supplemental jurisdiction, court should consider and weigh values of judicial economy, convenience, fairness and comity). That is especially true with respect to Count III, where there is no reference to federal law or federal regulations within the statute, as there is in the IPAC claim in Count II. And, as with the IPAC claim, there may be exhaustion requirements that would present yet more questions of state law. This is all the more reason why the Court, even absent the Eleventh Amendment bar, would decline the exercise of supplemental jurisdiction. Court III is therefore dismissed without prejudice, pursuant to Rule 12(b)(1), as barred by the Eleventh Amendment. Alternatively, Count III is dismissed without prejudice pursuant to 28 U.S.C. § 1367.[6]

---

[6]The dismissal of Counts II and III as barred by the Eleventh Amendment falls under Rule 12(b)(1), because the Eleventh Amendment bar acts to deprive the court of subject matter jurisdiction over the claim alleged. *See Vermont Agency of Nat'l Resources v. United States*, 529 U.S. 765, __, 120 S. Ct. 1858, 1865-66 (2000). *See also Marie O. v. Edgar*, 131 F.3d 610, 614 (7th Cir. 1997) (affirming dismissal of claim against State of Illinois under Rule 12(b)(1) as barred by Eleventh Amendment). As for the alternative basis for dismissal under 28 U.S.C. § 1367, there is authority for treating dismissal of state law claims pursuant to Section 1367(a) as a Rule 12(b)(1) dismissal. *See, e.g., Serrano-Moran v. Grau-Gaztambide*, 195 F.3d 68, 69 (1st Cir. 1999) (ordering modification of judgment to reflect dismissal under Section 1367(a) as falling under Rule 12(b)(1), rather than under its own authority); *Traylor v. Hayward*, 210 F.3d 355, No. 99-6307, 2000 WL 427456, * 1 (2d Cir. Apr. 20, 2000) (same). There is also authority for treating dismissals pursuant to Section 1367(c) as Rule 12(b)(1) dismissals. *See Deharder Investment Corp. v. Indiana Housing Finance Authority*, 909 F. Supp. 606, 617 (S.D. Ind. 1995) (treating dismissal pursuant to Section 1367(c)(3) as one without prejudice because based on lack of jurisdiction). Nonetheless, whether a Section 1367 dismissal is one falling under Rule 12(b)(1) or its own authority makes no real difference to the outcome of the defendants' motion here, because the application of both rules result in dismissal of Counts II and III without prejudice to plaintiffs' ability to seek to pursue those claims in state court.

## CONCLUSION

For the reasons given above, the defendants' motion to dismiss is granted in part and denied in part (Doc. # 37). Counts II and III of the plaintiff's amended complaint are dismissed without prejudice pursuant to Rule 12(b)(1), and plaintiffs thus may pursue these claims in state court. The defendants' motion to dismiss Count I is denied as to Ms. Patla in her official capacity, but is granted as to the IDPA pursuant to Rule 12(b)(6).

ENTER:

*/s/ Sidney I. Schenkier*

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: February 27, 2001**